## LOBENSTEIN *v.* UNITED STATES.

1. Where a party under his contracts with the United States was entitled to "all hides of beef-cattle slaughtered for Indians" which the Superintendent of Indian Affairs should decide were not required for their comfort, and where the Commissioner of Indian Affairs directed that the cattle be turned over to the agent who gave them out from time to time to the Indians, by whom they were killed, — *Held,* that the order of the Commissioner was in effect a decision that the hides were required for the comfort of the Indians, and excused the United States from delivery to the contractor.

2. The estimate of the number of hides, — about two thousand, more or less, and about four thousand, more or less, — as made in the contracts, does not create an obligation on the part of the United States to deliver that number, as the conditions of the agreement rendered it impossible for either party to determine how many would be reserved for the Indians. Therefore, the number specified could not have been understood to be guaranteed.

APPEAL from the Court of Claims.

Lobenstein filed his petition in the Court of Claims for the recovery of $16,860.42 as damages for a breach of his contract with the United States.

That court found the facts to be as follows : —

In the year 1869, an arrangement was entered into between the Department of the Interior and the Department of War, for the supply, through the Subsistence Department of the Army, of beef-cattle to the Indians, in pursuance of the fourth section of the act of April 10, 1869, "making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the year ending June 30, 1870." 16 Stat. 13, 40.

By that arrangement, the Department of War undertook to supply, through its Subsistence Department, such cattle as should be needed for Indians in the vicinity of Camp Supply and Fort Sill; and in reference thereto, as well as to other matters, the Commissary-General of Subsistence of the Army, on the 26th of May, 1869, gave written instructions to Brevet Major-General H. F. Clarke, Assistant Commissary-General of Subsistence in the Military Division of the Missouri; which instructions, in connection with the matter of furnishing said cattle, contained the following words : —

"The cattle should be by contract, if possible, — delivered by

the contractors monthly or weekly, and, when received, actually weighed upon the scales, to be transferred to the agents on foot; the Indians to have the benefit of the fifth quarter extra. The hides to be preserved and saved for sale when practicable."

The agents here referred to were officers of the army, appointed to act as Indian agents at the. several places where subsistence-supplies were to be issued to the Indians.

General M. R. Morgan, Chief Commissary of Subsistence of the Military Department of the Missouri, stationed at Fort Leavenworth, Kan., was charged with the supervision of the subsistence of the Indians on the Southern Reservation, which included those to be supplied from Camp Supply and Fort Sill; and the aforesaid instructions to General Clarke were transmitted to him for his guidance.

Supposing himself thereto authorized by the above-quoted words of said instructions, the said Morgan entered into the two written contracts with the claimant sued on, and which are in the words following, to wit: —

" *Articles of agreement between Bt. Brig.-Gen. M. R. Morgan, C. S.,* *United States Army, on the part of the United States, of the* *first part, and W. C. Lobenstein, of Leavenworth County,* *State of Kansas, of the other part, made on the twenty-sixth* *day of July, one thousand eight hundred and sixty-nine.*

" This agreement witnesseth : That the said party of the second part shall have all the hides of beef-cattle slaughtered for Indians at Fort Sill, Indian Territory, up to and including June 30, 1870, which the Superintendent of Indian Affairs at that place shall decide are not required for the comfort of the Indians; the number of hides to be about four thousand (4,000), more or less. The hides shall be of average size, and, when turned over, dry-cured, and in good order and condition. They shall be turned over on the spot, to the said party of the second part or his authorized agent, at the end of each month, at which time said agent of the party of the second part shall give a receipt for the number of hides turned over to him in good order and condition; and the responsibility of the party of the first part on account of said hides shall then cease.

 " The agent of the said party of the second part shall superintend the skinning and curing of the hides.

" For and in consideration of the hides received, the party of the

second part shall pay, monthly, the party of the first part the sum of two dollars ($2.00) for each and every hide received, upon the party of the first part surrendering the receipt of the agent of the party of the second part for the number of hides received.

"It is understood that while the party of the first part, after the turning over of the hides to the party of the second part, is not responsible for their safety and care, he will furnish such protection and shelter for the hides as he can conveniently control.

"Subscribed to the year and day first above written.

"M. R. MORGAN,

"*Bt. Brig.-Gen. & C. S.*

"W. C. LOBENSTEIN."

"*Articles of agreement between Bt. Brig.-Gen. M. R. Morgan, C. S., United States Army, on the part of the United States, of the first part, and W. C. Lobenstein, of Leavenworth County, State of Kansas, of the other part, made on the twenty-sixth day of July, one thousand eight hundred and sixty-nine.*

"This agreement witnesseth: That the said party of the second part shall have all the hides of the beef-cattle slaughtered for Indians at Camp Supply, Indian Territory, up to and including June 30, 1870, which the Superintendent of Indian Affairs at that place shall decide are not required for the comfort of the Indians; the number of hides to be about two thousand (2,000), more or less. The hides shall be of average size, and, when turned over, dry-cured, and in good order and condition. They shall be turned over on the spot, to the said party of the second part or his authorized agent, at the end of each month, at which time said agent of the party of the second part shall give a receipt for the number of hides turned over to him in good order and condition; and the responsibility of the party of the first part on account of said hides shall then cease.

"The agent of the said party of the second part shall superintend the skinning and curing of the hides.

"For and in consideration of the hides received, the party of the second part shall pay, monthly, the party of the first part the sum of two dollars ($2.00) for each and every hide received, upon the party of the first part surrendering the receipt of the agent of the party of the second part for the number of hides received.

"It is understood that while the party of the first part, after the turning over of the hides to the party of the second part, is not

responsible for their safety and care, he will furnish such protection and shelter for the hides as he can conveniently control.

"Subscribed to the day and year first above written.

"M. R. MORGAN,
"*Bt. Brig.-Gen. & C. S.*
"W. C. LOBENSTEIN."

It does not appear that any other authority than the above-quoted words from the Commissary-General's instructions was given, either to said Clarke or said Morgan, in reference to the preservation, saving, or sale of hides.

In September, 1869, the Commissioner of Indian Affairs directed that the cattle should all be turned over to the Indian agent on the hoof, which was done; and they gave them out from time to time to the Indians, by whom they were killed and cut up; and no cattle were slaughtered for the Indians at Fort Sill or at Camp Supply by any one acting under the authority of the United States, and the claimant obtained no hides of cattle furnished to the Indians at either of those posts, during the period of time covered by the said contracts.

The number of cattle supplied to the Indians from the date of said contracts to June 30, 1870, was, at Fort Sill, 2,641; and at Camp Supply, 1,172.

The claimant fully prepared himself to carry out and perform said contracts on his part; and to that end he sent an agent to Fort Sill, and one also to Camp Supply, to receive hides for him; and for their services and necessary expenses he paid them $1,256.75. Said agents were not sent to those points by order of General Morgan, nor did they in any way represent him or any other officer of the United States.

Upon these facts, the conclusion of law was that the claimant was not entitled to any recovery, because there had been no breach of the contract by the defendants.

*Mr. C. F. Peck* for the appellant.

The condition precedent brought forward to defeat this contract most strongly establishes its validity. The agents of the government prevented the Superintendent of Indian Affairs from making a decision by removing all opportunity and ground for it, and then object that the case must fail because

such decision was not made. The rule of law in such a case is well settled.

It will always excuse the performance of a condition precedent when it was hindered or prevented by the other party.

No party can insist upon a condition precedent when its non-performance has been caused by himself. *Williams* v. *The Bank of the U. S.*, 2 Pet. 102; *Betts* v. *Perrine*, 14 Wend. 219; *Camp* v. *Barker*, 21 Vt. 469; *Marshall* v. *Craig*, 1 Bibb, 384; *Majors* v. *Hickman*, 2 id. 218; *Jones* v. *Walker*, 13 B. Mon. 163; *Fleming* v. *Gilbert*, 3 Johns. 528; *McNairy* v. *Bishop*, 8 Dana, 150; *Mayor, &c.* v. *Butler*, 1 Barb. 338.

The number of hides to be furnished was estimated, and that estimate formed the basis of the contract.

The expression, "the number of hides to be about 4,000, more or less," manifests plainly that both General Morgan and Mr. Lobenstein supposed and intended that about so many would be delivered.

While the statement, "4,000, more or less," does not rigidly control the contract, it does not admit of any serious departure from that number. *Day* v. *Finn*, Owen, 133, cited in 9 Vin. Abr. 343, Pl. 10; *Quesnel* v. *Woodlief et al.*, cited in 2 Hen. & Munf. 173, n.; *Nelson* v. *Matthews*, 2 Hen. & Munf. 173; *Cross* v. *Elgin*, 2 Barn. & Adol. 106.

*Mr. Assistant Attorney-General Edwin B. Smith* for the United States.

The decision of the Superintendent of Indian Affairs as to the number of hides required for the comfort of the Indians was a condition precedent to the claimants becoming entitled to any hides.

It makes no difference whether that official never made any decision, or decided that all the hides were required by the Indians : in either case, the claimant cannot recover. *Thurnell* v. *Balbirnie*, 2 M. & W. 786, 790; *Worsley* v. *Wood*, 6 T. R. 710; *Milner* v. *Field*, 5 Exch. 829; *Morgan* v. *Birnie*, 9 Bing. 672; *Cook* v. *Jennings*, 7 T. R. 384; *Moakley* v. *Riggs*, 19 Johns. 69; *Taylor* v. *Bullen*, 6 Cow. 629.

The contract was subject to the superintendent's arbitration. If he declined to arbitrate, or decided adversely to the claimant's having any hides, the result would be the same. In either

contingency, the contract was at end.     Cases cited *supra ;*
*Palmer* v. *Clark*, 106 Mass. 389; *Flint* v. *Gibson,* id. 391;
*Grafton* v. *Eastern Cos.*, 8 Exch. 699.

The number of hides referred to in the contracts was not
a guaranteed number, for the reason that the determination of
the question as to how many the Indians would require could
be arrived at only by the decision of the Superintendent of
Indian Affairs.

MR. CHIEF JUSTICE WAITE delivered the opinion of the
court.

We agree entirely with the Court of Claims in its construc-
tion of the contracts sued upon in this case.   By one contract,
Lobenstein was to have " all the hides of beef-cattle slaughtered
*for* Indians at Camp Supply, . . . up to and including June
30, 1870, which the Superintendent of Indian Affairs at that
place shall decide are not required for the comfort of the In-
dians; the number of hides to be about 2,000, more or less."
The other contract is similar in its terms for the hides of cattle
slaughtered *for* Indians at Fort Sill, the number to be about
4,000, more or less.

The Commissioner of Indian Affairs directed that all the
cattle should be turned over to the Indian agent on foot; and
this was done.   None were slaughtered by any person acting
under the authority of the United States; but they were all
given out from time to time to the Indians, by whom they
were killed.   Consequently, no hides could be delivered under
the contracts.

There was no obligation on the part of the United States to
slaughter the cattle or any portion of them for the Indians; and
they were only bound to deliver the hides of such as they did
slaughter, in case the Superintendent of Indian Affairs did not
decide that they were required for the comfort of the Indians.
If he decided that all were required by the Indians, that
excused the United States from delivery to Lobenstein.   He
did, in effect, so decide when the Commissioner directed that the
cattle should all be delivered on foot.   Lobenstein took this
risk when he entered into the contracts, and he undoubtedly
made his calculations of profits in case of success accordingly.

The best evidence of this is to be found in the fact that he claims in this action to recover more than $15,000 for alleged loss of profits, while he has actually expended in preparation to meet his obligations only $1,256.75.

The estimate of the number of hides as made in the contracts does not create an obligation on the part of the United States to deliver that number. That estimate was undoubtedly intended as a representation of the probable number of cattle that would be delivered to the Indians. In point of fact, the number actually delivered was very much less. Neither party could determine how many would be reserved by the Commissioner for the use of the Indians. Therefore, necessarily, when the contract was made, the number specified could not have been understood to be a guaranteed number. If that number or its approximation was not guaranteed, none was. It follows as a consequence that this claimant has no right of action. He took his risk, and insured himself in his anticipated large profits if his venture proved a success.

*The judgment of the Court of Claims is affirmed.*